MATTHEW J. BLASCHKE (State Bar No. 281938)
mblaschke@kslaw.com
**KING & SPALDING LLP**
50 California Street Suite 3300
San Francisco, CA  94111
Telephone:	(415) 318-1212
Facsimile:	(415) 318-1300

DAVID L. BALSER (*pro hac vice forthcoming*)
dbalser@kslaw.com
S. STEWART HASKINS II (*pro hac vice forthcoming*)
shaskins@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone.:	(404) 572-4600
Facsimile:	(404) 572-5100

Counsel for Capital One Defendants

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| RONEY MIRANDA and ALAIN MICHAEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE BANK (USA), N.A., CAPITAL ONE, N.A., AMAZON.COM, Inc., and AMAZON WEB SERVICES, Inc.<br><br>Defendants. | Case No.<br><br>**CAPITAL ONE DEFENDANTS' NOTICE OF REMOVAL** |

NOTICE OF REMOVAL

Defendants Capital One Financial Corporation, Capital One Bank (USA), N.A., and Capital One, N.A. (collectively, "Capital One") hereby remove this purported class action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California, Oakland Division. This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, with the consent of Defendants Amazon.com, Inc. ("Amazon") and Amazon Web Services, Inc. ("AWS"), and on the basis of the following facts, which show that this case may properly be removed to this Court:

## BACKGROUND AND PLAINTIFFS' COMPLAINT

1. Plaintiffs Roney Miranda and Alain Michael filed this case on September 17, 2021, in the Superior Court of California for the County of Alameda, Case Number RG21113096, styled as *Roney Miranda and Alain Michael, on behalf of themselves and all others similarly situated v. Capital One Financial Corporation, Capital One Bank (USA), N.A., Capital One, N.A., Amazon.com, Inc., and Amazon Web Services, Inc.* (the "State Court Action").

2. The Complaint filed in the State Court Action is attached as Exhibit A (the "Complaint" or "Compl."). Capital One was served with the Complaint on October 22, 2021, making this removal timely.

3. The Complaint asserts the following claims: (1) negligence, (2) negligence *per se*, (3) unjust enrichment, (4) declaratory judgment and injunctive relief, (5) breach of confidence, (6) breach of contract, (7) breach of implied contract, (8) violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), and (9) violation of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq*.). *See* Compl. ¶¶ 152-244

4. The foregoing claims all arise from the cyber-attack Capital One announced on July 29, 2019 (the "Cyber Incident"), which affected nearly 100 million U.S. consumers. *See id.* ¶¶ 1-2.

5. As set forth in the Complaint, the Cyber Incident was perpetrated by a hacker named Paige Thompson. *Id.* ¶¶ 3, 55. Plaintiffs allege that Thompson exfiltrated personal information pertaining to consumers who applied for Capital One credit card products between 2005 and 2019. *Id.* ¶¶ 3-5, 79.

6. Plaintiffs allege that Capital One "failed to adequately protect the PII[1] that Plaintiffs and class members entrusted to [it]" and is thus liable to Plaintiffs for damages resulting from the Cyber Incident. *Id.* ¶ 3.

7. Plaintiffs further allege they were injured as a result of Capital One's conduct. In particular, Plaintiffs claim that they "have suffered and/or will suffer or continue to suffer" the following injuries as "the result of the Data Breach":

- "purchasing services they would not have otherwise paid for" or "paying more for services than they otherwise would have paid" had "they known the truth about Defendants' substandard data security practices;"
- "losing the inherent value of their PII;"
- "losing the value of the unauthorized access to their PII permitted by Defendants;"
- "losing the value of Capital One's explicit and implicit promises of adequate data security;"
- "identity theft and fraud resulting from the theft of their PII;"
- "costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;"
- "costs associated with purchasing credit monitoring and identity theft protection services;"
- "the present value of credit monitoring and identity theft protection services necessary to restore Plaintiffs . . . to the position they would have been in but for Defendants' wrongful conduct;"
- "unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts . . . including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;"
- "lowered credit scores resulting from credit inquiries following fraudulent activities;"

---

[1] The term "PII" is defined in the Complaint to refer to the personal information stolen in the Cyber Incident. *See id.* ¶ 2.

- "costs associated with time spent and the loss of productivity or the enjoyment of their lives from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach;"

- "the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being in the possession of one or many unauthorized third parties."

*Id.* ¶ 135.

8. In addition to those alleged injuries, which are not tied to any particular cause of action in the Complaint, Plaintiffs assert other injuries specific to each claim. For their negligence claim, Plaintiffs allege that as "a direct and proximate result of the Capital One Defendants' negligence," Plaintiffs "have been injured" through the "illegal sale of the compromised PII on the black market"; the "loss of the value of their privacy and the confidentiality of the stolen PII"; and "lost work time," in addition to the injuries enumerated above. *Id.* ¶ 163; *see also id.* ¶ 172 (alleging the same injuries with respect to Plaintiffs' negligence *per se* claim); *id.* ¶ 206 (same, as to their breach of confidence claim).

9. For their unjust enrichment claim, Plaintiffs seek "restitution or disgorgement in the amount of the benefit conferred" on Capital One, including the value "of the PII that was stolen in the Data Breach," the profits or savings Capital One allegedly realized from using that information, the amounts by which Capital One allegedly overcharged Plaintiffs, and the amounts Capital One allegedly "should have spent to provide reasonable and adequate data security to protect Plaintiffs and class members' PII." *Id.* ¶ 187.

10. With respect to their claims for breach of contract and breach of implied contract, Plaintiffs allege that they lost the benefit of their bargain for credit card services from Capital One, that they lost the "value of the unauthorized access to their PII," and that they are entitled to the present value of credit monitoring and identity theft protection services. *Id.* ¶¶ 214, 222.

11. Finally, for their claims under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"), Plaintiffs assert lost benefit-of-the-bargain damages, "losses from fraud and identity theft," mitigation-related injuries, and "loss of value of their PII,"

4

NOTICE OF REMOVAL

among other claimed injuries. *See id.* ¶¶ 230, 232, 242.

12. In the alternative to their alleged actual damages set forth above, Plaintiffs seek nominal damages for their unjust enrichment, breach of confidence, breach of contract, and breach of implied contract claims. *See id.* ¶¶ 187, 206, 214, 222.

13. Plaintiffs also seek declaratory and injunctive relief. *Id.* ¶¶ 188-96, 232, 243-44.

14. Plaintiffs purport to bring the State Court Action on behalf of a putative class defined as "[a]ll California citizens whose PII was compromised in the Data Breach." *Id.* ¶ 139. Plaintiffs allege that the "exact number of class members is unknown" but that it is comprised of "many millions of persons throughout California." *Id.* ¶ 144.

15. Plaintiffs further allege that the "members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical." *Id.*

16. Based on the allegations of the Complaint, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because Capital One has satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

## THE COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA

17. The Court has original jurisdiction over the State Court Action, and the case may be removed to this Court pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA").

18. CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. To that end, CAFA provides that class actions filed in state court are removable to federal court if they meet certain basic prerequisites. Specifically, CAFA expanded federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction where the putative class contains at least 100 class members; any member of the putative class is a citizen of a State different from that of any defendant; and the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

**A. The Putative Class Exceeds 100 Members.**

19. Plaintiffs purport to assert claims on behalf of "[a]ll California citizens whose PII was

compromised in the Data Breach." Compl. ¶ 139.

20. Plaintiffs allege that the putative class includes "many millions" of California residents. *Id.* ¶ 144.

21. Capital One's records reflect that the information of more than 10 million individuals with addresses in California were impacted by the Cyber Incident.

22. Accordingly, the aggregate number of putative class members is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

**B. Minimal Diversity Exists.**

23. Under CAFA, only minimal diversity is required to confer original federal jurisdiction. *See* 28 U.S.C. § 1332(d)(2)(A) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . *any member of a class of plaintiffs is a citizen of a State different from any defendant*[.]") (emphasis added).

24. This element is satisfied. Plaintiffs allege that Capital One Financial Corporation is incorporated under the laws of Delaware and has its principal place of business in Virginia. *See* Compl. ¶ 10. Plaintiffs further allege that Capital One, N.A. and Capital One Bank (USA), N.A. have their principal places of business in Virginia. *See id.* ¶¶ 11-12.

25. Additionally, as national banks, Capital One, N.A. and Capital One Bank (USA), N.A. are considered citizens of the state in which their "main office, as set forth in [their] articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). For both entities, that is Virginia.

26. Plaintiffs allege that Amazon and AWS are incorporated under the laws of Delaware and have their principal place of business in Washington. *See id.* ¶¶ 14-15.

27. Finally, Plaintiffs allege that they are both citizens and residents of California, and the putative class is defined to encompass only California residents. *See id.* ¶¶ 20-21, 144.

28. Because at least one member of the putative class (*i.e.*, the two Plaintiffs and all putative class members) is diverse from Capital One, the requirement of minimal diversity under 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**C. The Amount in Controversy Exceeds $5 Million.**

29. Under CAFA, federal district courts have original jurisdiction where, among other things, the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).

30. To satisfy this requirement, a defendant's notice of removal "need not contain evidentiary submissions"; all that is required is "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 89 (2014). *See also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (CAFA's amount-in-controversy requirement is satisfied where "it is reasonably possible that the potential liability exceeds $5 million").

31. Further, where a "plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart*, 574 U.S. at 84.

32. The Complaint filed by Plaintiffs in the State Court Action does not specify a precise amount of claimed damages. *See, e.g.*, Compl. ¶ 163 (alleging Plaintiffs "are entitled to damages in an amount to be proven at trial"). But given the number of alleged class members and the damages alleged in the Complaint, it is clear from Plaintiffs' allegations that far more than $5 million is at stake.

33. In their Request for Relief, Plaintiffs seek, among other things, (i) "an award of compensatory, consequential, and general damages, including nominal damages," (ii) "an award of statutory damages, trebled, and punitive or exemplary damages," (iii) "an award of restitution or disgorgement," and (iv) "an award of attorneys' fees, costs and litigation expenses." *Id.* at Request for Relief.

34. Further, as noted above (*see supra* ¶¶ 7-11), Plaintiffs allege that these damages should be measured by reference to, among other things, "the present value of credit monitoring and identity theft protection services," the "inherent value of their PII," and "the amount of the benefit conferred on Defendants," including "the profits or cost savings Defendants are receiving from the use of that information" and "the amounts that Capital One should have spent" to provide "adequate data security." Compl. ¶¶ 135, 187, 206.

35. Considering only Plaintiffs' claim for "the present value of credit monitoring and

identity theft protection services" (*id.* ¶ 135), the $5 million amount-in-controversy requirement is satisfied.

36. The cost of credit monitoring and/or identity theft protection services typically ranges from $8.99 to $39.95 per month.[2] For example, two popular credit monitoring services recommended by CNBC are IdentityForce and PrivacyGuard. *See* Alexandria White, "The best credit monitoring services that can help you spot fraud early," CNBC Select, Oct. 28, 2021, https://www.cnbc.com/select/best-credit-monitoring-services/ (last visited Nov. 3, 2021).

37. The least expensive individual identity theft protection product offered by IdentityForce is $9.99 per month; adding a credit monitoring product increases the total price to $17.99. *See* https://secure.identityforce.com/products-and-pricing (last visited Nov. 3, 2021). Similarly, the least expensive individual credit monitoring and identity theft protection product offered by PrivacyGuard costs $19.99 per month. *See* https://www.privacyguard.com/ (last visited Nov. 3, 2021).

38. There are also more expensive options available. For instance, a product called LifeLock Ultimate Plus costs $29.99 per month (if billed monthly). *See* https://www.lifelock.com/#planschart (last visited Nov. 3, 2021).

39. In no event would credit monitoring and identity theft protection services be available for less than $2.50 per month.

40. As noted above, Plaintiffs allege that the personal information of "many millions" of Californians was impacted by the Cyber Incident. Compl. ¶ 144. By definition, that means Plaintiffs' putative class is alleged to include at least 2 million individuals.[3]

41. Thus, even assuming Plaintiffs sought only *one* month of credit monitoring valued at $8.99/month, *and* assuming that there are only 2 million putative class members, the amount in

---

[2] *See, e.g.*, CNBC Select, "How much does credit monitoring cost?" (Sep. 10, 2021), https://www.cnbc.com/select/how-much-does-credit-monitoring-cost (last visited Nov. 3, 2021).

[3] As set forth above, Capital One estimates that the personal information of over 10 million individuals with California addresses was impacted in the Cyber Incident. Thus, the alleged class likely exceeds 2 million individuals.

controversy would exceed $17 million (2 million * $8.99 = $17,980,000).[4] While Capital One denies Plaintiffs' allegations and denies that Plaintiffs' claims may be certified as a class action, if Plaintiffs' class claims are successful, this requested remedy alone exceeds CAFA's amount in controversy requirement.[5]

42. The "present value of credit monitoring and identity theft protection services" is only one among many damages Plaintiffs seek. The Complaint alleges Plaintiffs are entitled to compensatory, consequential, and general damages, including nominal damages, statutory damages (trebled), punitive or exemplary damages, restitution, disgorgement, and attorneys' fees. Plaintiffs also seek declaratory relief and extensive injunctive measures.

43. It is therefore likely that Plaintiffs seek more in damages than the calculation above—which is based on only one alleged injury—would suggest. In fact, the only way CAFA's $5 million amount-in-controversy requirement would *not* be satisfied based on a 2-million-person class is if Plaintiffs sought *less than* $2.50 per class member. Similarly, assuming the class consists of 10 million individuals, the only way CAFA's amount-in-controversy requirement would not be satisfied is if Plaintiffs sought *less than* 50 cents per class member. As discussed above, there is no credit monitoring and identity theft protection product that offers even one month of services for that amount.

44. Accordingly, the amount-in-controversy element is easily met.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

45. Capital One is removing the State Court Action to the United States District Court for the Northern District of California, Oakland Division, because the case was originally filed in the Superior Court of California for the County of Alameda, a state court located within the Oakland Division of the Northern District of California. Accordingly, this Court is in the "district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a).

---

[4] "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

[5] Capital One reserves the right to present additional evidence concerning Plaintiffs' purported damages and the other elements of Plaintiffs' requested relief, including injunctive relief, should Plaintiffs contend that the amount-in-controversy requirement is not satisfied in this case.

46. Removal is also timely. Plaintiffs filed the State Court Action on September 17, 2021. Capital One was served with the Complaint on October 22, 2021. Accordingly, this Notice of Removal was filed within 30 days of service of the Complaint on Capital One, making removal timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). No previous application has been made for the relief requested herein.

47. Capital One has not filed a responsive pleading, and it reserves all rights to assert any and all defenses with respect to the Complaint. Capital One also reserves the right to amend or supplement this Notice.

48. Pursuant to 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders served" on Capital One in the State Court Action is attached as Exhibits A through E.[6] Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiffs, and a copy is being filed with the Superior Court of California for the County of Alameda.

49. For the foregoing reasons, this action is properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and 1453, and this Court may exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d).

## CONCLUSION

WHEREFORE, Capital One removes this action from the Superior Court of California for the County of Alameda to the United States District Court for the Northern District of California, Oakland Division, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453(b).

Dated: November 3, 2021

Respectfully submitted,
KING & SPALDING LLP

By: /s/ Matthew J. Blaschke
MATTHEW J. BLASCHKE
DAVID L. BALSER (*pro hac vice forthcoming*)
S. STEWART HASKINS II (*pro hac vice forthcoming*)
*Counsel for Capital One Defendants*

---

[6] Exhibit A contains the Cover Sheet and Complaint. Exhibit B contains the Summonses. Exhibit C contains the current docket sheet. Exhibit D contains all proofs of service. Exhibit E contains the orders entered by the Court thus far. Together, these documents encompass all "process, pleadings, and orders served" on Capital One in the State Court Action.